

# Notice of Service of Process

**CHS / ALL**
**Transmittal Number: 19314214**
**Date Processed: 02/05/2019**

| | |
|---|---|
| **Primary Contact:** | Sheryl Arneson<br>3M Company<br>3M Center<br>Bldg 220-9E-02 220-10W/F06<br>Saint Paul, MN 55144-1000 |
| **Electronic copy provided to:** | Gwen Bernardy-Bauer<br>Canhnha Luu |
| **Entity:** | 3M Company<br>Entity ID Number  3571748 |
| **Entity Served:** | 3M Company |
| **Title of Action:** | David P. Johnson vs. 3M Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | Goodhue County District Court, MN |
| **Case/Reference No:** | Not Shown |
| **Jurisdiction Served:** | Minnesota |
| **Date Served on CSC:** | 02/04/2019 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Charlie R. Alden<br>612-990-2484 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

| | |
|---|---|
| STATE OF MINNESOTA | COUNTY OF GOODHUE |
| DISTRICT COURT | FIRST JUDICIAL DISTRICT |

Court File No.: _____
Case Type:   Employment

David P. Johnson,

               Plaintiffs,               **SUMMONS**

v.

3M Company,

               Defendant.

     **To:**  3M Company, 2345 Rice Street, Suite 230, Roseville, MN 55113-5603

     1. **YOU ARE BEING SUED.** The Plaintiffs have started a lawsuit against you. The Plaintiffs' Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

     2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.**  You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

**GILBERT ALDEN PLLC**

Charlie R. Alden, Reg. No. 0389896
2801 Cliff Rd E
Suite 200
Burnsville, MN 55337
612-990-2484 l Office & Cell
612-806-0585 l Fax

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiffs' Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiffs should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiffs everything asked for in the Complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: February 4, 2019          **GILBERT ALDEN PPLC**

By: /s/ Charlie R. Alden
    Charlie R. Alden, Reg. No. 0389896
    2801 Cliff Rd E
    Suite 200
    Burnsville, MN 55337
    Charlie@GilbertAlden.com
    612-990-2484 | Office & Cell
    612-806-0585 | Fax

**ATTORNEYS FOR PLAINTIFFS**

## ACKNOWLEDGMENT

That costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.21 to the party against whom the allegations in this pleading are asserted.

Dated this 4th day of February, 2019

/s/ Charlie R. Alden
Charlie R. Alden

| | |
|---|---|
| STATE OF MINNESOTA | COUNTY OF GOODHUE |
| DISTRICT COURT | FIRST JUDICIAL DISTRICT |

Court File No.: _____
Case Type:   Employment

David P. Johnson,

               Plaintiffs,             **COMPLAINT**
v.                                      **JURY TRIAL DEMANDED**

3M Company,

               Defendant.

## PARTIES, JURISDICTION & VENUE

1.    Plaintiff David P. Johnson ("Johnson") is a natural person who resides in the County of Dakota, State of Minnesota.

2.    Defendant 3M is a business entity incorporated in the state of Delaware.

3.    Defendant's principal place of business is St. Paul, Minnesota, however, the events described herein took place in Red Wing, Minnesota at 3M's technical writing center.

4.    At all times relevant hereto, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of 29 U.S.C. § 2611.

## JURISDICTION AND VENUE

5.    The Court has jurisdiction over this matter and venue is appropriate in this district because the cause of action arose in this county.

## FACTUAL BACKGROUND

6.    Johnson worked for Capital Safety since August 18, 2014, in its technical writing department in Red Wing, Minnesota.

7. On or about September 15, 2015 Capital Safety, was acquired by 3M. Johnson's manager for all relevant periods, both with Capital Safety and 3M, was Jeff Wipperling.

8. A few weeks after starting at Capital Safety, Johnson was diagnosed with Parkinson's disease. When he told this to Wipperling, Wipperling's response was not to express sympathy or ask how 3M could help, but to ask Johnson how long he had known about it.

9. In May of 2015, as his Parkinson's progressed, Johnson requested an accommodation or working from home one day per week. Working from home one day per week was a necessary accommodation for several reasons. First, it reduced the stress of having to commute. Second, it eliminated the stress of having to commute every day of the week. Third, it was helpful to have a flexible working environment where Johnson could work in a more comfortable position, which reduced his Parkinson's related shaking (as a result of motor skill issues), cramping and inflammation.

10. After his initial diagnosis, Johnson continued to work full-time, and before his symptoms worsened and he was diagnosed with cancer, received a positive annual review for 2016.

11. In early 2017, Johnson's Parkinson's had continued to progress. His motor skills, shaking, cramps, an inflammation had gotten worse. Furthermore, between 2015 and 2017, Mr. Johnson had to increase his Parkinson's medication. He was taking Carbidopa-Levodopa, Ropinirol, and Fluoxetine, among other drugs. The side effects of these medications included reduced motor skills, which hampered Johnson's ability to type, slower mental faculties, confusion and difficulty concentrating. Stress exacerbates the symptoms of Parkinson's.

2

Furthermore, some of the medications Johnson was prescribed caused the same side effects of difficulty concentrating, anxiety, and exhaustion.

12. On March 20, 2017, Johnson went to see a physician at Health Partners who wrote a note advising that Johnson should be permitted to work 1-2 days from home per week.

13. 3M's technical writing department outsources its determinations on the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") to a third-party administrator called Sedwick. Sedgwick's responsibility is to evaluate an employee's request for accommodations or FMLA leave, work with the employer to see what accommodations can be made, and advise the employer of the accommodations.

14. Johnson had frequent phone conversations with Sedgwick throughout 2017. In these conversations, Mr. Johnson expressed that given his trouble concentrating, anxiety, and exhaustion, he needed a reduced workload as a reasonable accommodation. In conversations with his supervisor Wipperling, Johnson also requested a reduced workload on many occasions. Wipperling's response to Johnson was always that all requests for accommodations should be directed to Sedgwick, who would communicate with Wipperling or others at 3M.

15. In October 2017, Johnson was diagnosed with prostate cancer. He was absent from work on October 12 for a medical appointment relating to his diagnosis.

16. Upon receiving his diagnosis, Johnson told Wipperling, who was curt and unsympathetic, and told Johnson to "suck it up."

17. On December 5, 2017, Mr. Johnson met with his physician and learned that he would begin radiation therapy on January 15, 2018. Radiation therapy

3

consisted of four-hour treatments, five days per week, with a total of eighty radiation therapy appointments, extending through March 26, 2018.

18. On December 6, 2017, Johnson was seen at Health Partners and put off work for two days.

19. On December 7, 2017, Johnson submitted an application for FMLA intermittent leave.

20. On December 7, 2017, Johnson received notification from 3M disability programs requesting documentation from his health care provider to determine whether his leave on December 7 and 8 was approved as FMLA leave.

21. On December 7, 2017, Wipperling received email notification that Johnson's request for leave on October 12, 2017 was denied because the claim was reported late and there were no extraordinary circumstances to warrant the late reporting of the claim.

22. On December 14, 2017, Wipperling received email notification that Johnson had not yet provided his Health Care Provider Certification for his December 7 FMLA request, and that the documentation was due by December 22, 2017.

23. On December 19, 2017, Johnson's treating physician filled out, and 3M received, medical certification of his request for intermittent FMLA leave.

24. His treating physician noted that beginning on approximately September 26, 2017, and lasting for at least six months, Johnson would require radiation therapy on a daily basis and would be unable to attend work, and that he would need to attend radiation therapy 4 hours per day, 5 days per week, beginning on December 4, 2017 through March 30, 2018.

25.     On December 27, 2018, Johnson submitted a second certification from his health care provider providing the same information and making the same request for authorized leave.

26.     On December 28, 2017, Johnson's request for intermittent leave was denied because Defendant claimed that Johnson did not have adequate medical information to confirm that Johnson qualified for leave.

27.     During this period of time, with Parkinson's symptoms that had significantly worsened, suffering from anxiety, confusion and depression as a result of his recent diagnosis of prostate cancer, and missing work for doctor's appointments, and not having been approved for FMLA intermittent leave, Johnson's had trouble keeping up with his heavy workload as a technical writer. In the hopes that 3M would expedite his request and Wipperling would not punish him for his medical condition, Johnson routinely met with Wipperling to ask whether he could have a reduced workload to accommodate his difficulty concentrating, exhaustion, and anxiety. Wipperling refused Johnson's requests, advised him to speak with Sedgwick, and again told him to "suck it up."

28.     Johnson's 2017 performance review was completed by Wipperling on or about December 31, 2017. Wipperling gave Johnson the lowest performance ranking of his career, claiming that Johnson had "received feedback from the engineers on numerous mistakes that require reworking the IFUs and driving additional review time."

29.     In response to his review, Johnson noted on the form, which he was provided on or about February 20, 2018 (performance reviews were discussed a few months after the start of the new year), Johnson wrote:

5

> I believe that my rating was unfair based on the fact that my medical conditions, related medication side effects were ignored. On several occasions I stated to my manager that health situation affected my memory, dexterity and cognitive skills in an adverse manner. **Failing to reduce my workload also played a major role in my degraded performance, which I requested on more than one occasion.**

(emphasis added).

30. On January 8, 2018, Wipperling received email notification that Johnson's FMLA leave request was pending beginning on January 2, 2018, and that medical certification was due by January 23, 2018.

31. On February 12, 2018, Johnson was approved for FMLA intermittent leave, from January 2, 2018 through March 19, 2018 for 3 episodes per month lasting up to two days, and 5 episodes per week lasting up to 4 hours, to accommodate his daily radiation therapy. Despite his being approved for intermittent leave, Johnson continued to work 40 hours per week, since despite his frequent requests both to Wipperling and Sedgwick for a reduced workload, Johnson continued to be expected to do the same amount of work as before his cancer diagnosis and daily radiation, and the worsening of his Parkinson's with its attendant symptoms of anxiety, exhaustion, difficulty concentrating, and confusion.

32. At the February meeting discussing his 2017 review, Johnson again expressed his desire to have a reduced workload and told Wipperling that his accommodations were of no effect if he was expected to do the same amount of work.

33. On March 7, 2018, Sedgwick approved Johnson's request for an ADA Reasonable Accommodation to the effect that Johnson was permitted to work from home one day per week, and was granted "flexible work hours." Again,

6

despite undergoing 4 hours of radiation therapy daily, Johnson continued to work 30-40 hours per week, given that he continued to be assigned the same amount of work, despite frequently expressing his desire for less work to Wipperling and Sedgwick.

34. On March 19, 2018, Johnson was approved by Sedgwick for Short Term Disability and intermittent FMLA leave. He was approved to work 6 hours/day from January 22, 2018 through April 30, 2018.

35. In its grant of "reasonable accommodations," Sedgwick did not address Johnson's requests to be given a reduced workload. As such, he continued to work 30-40 hours per week while undergoing four hours of radiation therapy daily.

36. March 26, 2018 was the last day of Johnson's radiation therapy.

37. Wipperling chose this day to put Johnson on an Informal Performance Correction Plan ("IPCP"), which was to last 45 days.

38. The IPCP was a period of time where Johnson was presumably expected to improve his performance under the supervision of Wipperling. Of course, to the extent there were performance problems, they derived not from lack of effort on Johnson's behalf, but rather, due to Wipperling's expectations that Johnson perform the same amount of work, at the same quality, as prior to his cancer diagnosis and worsening of his Parkinson's, and before he was in radiation therapy for twenty hours every week.

39. On April 7, 2018, with his requests for a modified workload continuing to be ignored, Johnson submitted yet another request for reasonable accommodations to enable him to perform his position. The request was submitted to Sedgwick. Johnson had phone conversations with Sedgwick;

7

Johnson requested a modified workload, and continued to follow-up with Wipperling requesting the same.

40. During the informal correction period, Johnson had weekly meetings with Wipperling. Wipperling would ask general questions but offer no material suggestions to Johnson to improve his performance.

41. At the end of the 45-day informal probation period, Wipperling put Johnson on a formal probation, beginning on June 25, 2018. During the formal probation period, Johnson had weekly meetings with Wipperling to review his progress. Wipperling singled-out Johnson for adverse treatment during this time. For instance, he reprimanded Johnson for waiting outside of a coworker's office to sign a birthday card that was being circulated for signature through the office while the coworker was on the phone.

42. Wipperling documented Johnson's performance in weekly meetings. Johnson was rated in four categories. One, "time management," was an area where Johnson's performance was identified as requiring "immediate and ongoing" attention.

43. On July 13, 2018, Sedgwick finally responded to Johnson's April request for reasonable accommodations, but did not grant his request for a modified workload. Instead, Sedgwick stated that Johnson's accommodations would be a "restricted" 40-hour workweek, and 2 fifteen-minute breaks on either side of a 30 minute lunch break taken as reasonably close to every 2 hours with the final 15 minute break no later than 1PM. Sedgwick stated that the duration of the accommodations were to last from June 28 through September 8, 2018.

44. On September 5, 2018, Sedgwick (presumably in response to Johnson's multiple phone calls requesting a reduced work load as an accommodation) sent

Johnson another letter announcing that it had again "approved" his request for a reasonable accommodation. Sedgwick advised that Johnson would be permitted to work from home one day per week, have flexible work hours, work no more than 40 hours/week, and have the same fifteen minute breaks described in its July letter.

45.     During the pendency of his formal probation period, despite having been granted accommodations to work 6 hours per day, a flexible work schedule, and the ability to work from home one day per week, Johnson continued to work 40 hours per week, since he continued to have the same workload as prior to his cancer diagnosis and worsening of his Parkinson's. He continued to suffer from exhaustion, difficulty concentrating, and confusion, all of which made it difficult for him to complete his full workload with his attendant symptoms from cancer and Parkinson's.

46.     Johnson was terminated by 3M on or about September 20, 2018 as a result of his alleged failure to improve his performance. The only difference between Johnson's performance in 2018, during the period of his informal and formal review periods, and his performance earlier in his career with 3M, was that in 2018, Johnson was suffering from Parkinson's and prostate cancer, and required a reduced workload to perform at the level he'd done before his cancer diagnosis and worsening of his Parkinson's symptoms.

47.     At no time did Sedgwick or Wipperling engage in an interactive process to determine whether Johnson could be assigned a modified workload consistent with his modified work schedule. During all times, Johnson continued to work 40 hours per week, despite being permitted to work less, because his substantial workload required his full-time work.

9

## CAUSES OF ACTION

### COUNT I – FMLA INTERFERENCE

48. Plaintiff incorporates the foregoing paragraphs by reference as though fully stated herein.

49. "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days." 29 C.F.R. § 825.300(b).

50. Failure to follow the FMLA notice requirements may constitute an interference with FMLA rights. 29 C.F.R. § 825.300(e).

51. Johnson submitted requests for FMLA leave on October 12, 2017, and December 7, 2017. It was not until February that Johnson learned that he was approved for intermittent leave.

52. 29 C.F.R. § 825.300(e) provides that failure to follow the notice requirements "may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights."

53. Furthermore, the FMLA permits an employee to use leave intermittently, and provides that an employee may not suffer an adverse employment action for exercising his rights under the FMLA. By providing Johnson with intermittent leave, but expecting Johnson to do the work of a full-time employee, 3M denied Johnson intermittent leave and his rights under the FMLA, as evidenced by the fact that Johnson continued to work full-time despite having been granted intermittent leave.

54. As a result of 3M's interference with Plaintiff's FMLA rights and failure to provide required notices, Plaintiff has been damaged in an amount in excess of $15,000, to be determined with certainty at trial.

## COUNT II – FMLA REPRISAL

55. Plaintiff incorporates the foregoing paragraphs by reference as though fully stated herein.

56. An employer may not retaliate against an employee for exercising his rights under the FMLA. 3M, and Wipperling specifically, retaliated against Johnson for using FMLA intermittent leave by continuing to assign him a full workload and imposing upon him unreasonable expectations that resulted in Johnson's termination.

57. As a result of 3M's interference with Plaintiff's FMLA rights and failure to provide required notices, Plaintiff has been damaged in an amount in excess of $15,000, to be determined with certainty at trial.

## COUNT II – FAILURE TO ACCOMMODATE UNDER THE MINNESOTA HUMAN RIGHTS ACT

58. Plaintiff incorporates the foregoing paragraphs by reference as though fully stated herein.

59. Mr. Johnson is disabled as a result Parkinson's disease and prostate cancer.

60. Both of these illnesses cause difficulty performing major life activities, including but not limited to, working.

61. Upon learning of his cancer diagnosis and upon the worsening of his Parkinson's symptoms, Mr. Johnson requested accommodations in the form of a reduced workload. He made these requests directly to his supervisor, and to

11

Sedgwick as the claims administrator for ADA accommodations requests and the FMLA. Despite all of the "accommodations" that Defendant claimed to have offered, all were of limited use given that without a limited work load, Mr. Johnson was still required to work full-time and perform the same job duties, which is why Mr. Johnson was unable to use the accommodations he was purportedly granted.

62. Defendant never went through an interactive process to determine whether it would be feasible for Mr. Johnson to have a reduced workload and continue to do his job.

63. Defendant took adverse employment action against Mr. Johnson by putting him on probation, and ultimately terminating his employment.

64. Mr. Johnson has been damaged as a result of 3M's failure to engage in the interactive process, in an amount in excess of $15,000, to be determined with specificity at trial.

WHEREFORE, Plaintiff David Johnson requests an order from the Court providing making the following findings and providing the following relief:

1. Defendants failed to engage in the interactive process with Mr. Johnson to determine whether he could do his job with reasonable accommodations, in violation of the Minnesota Human Rights Act.

2. Defendants interfered with Mr. Johnson's rights under the Family Medical Leave Act and retaliated against him for exercising his rights under the FMLA.

3. Mr. Johnson is entitled to his costs, attorneys fees, and other penalties available by law, including liquidated damages under the FMLA, and

treble damages under the MHRA, plus back-pay, front pay, and pre and post judgment interest.

4. Any other relief afforded by law.

Dated: February 4, 2019

**GILBERT ALDEN PPLC**

By: /s/ Charlie R. Alden
Charlie R. Alden, Reg. No. 0389896
2801 Cliff Rd E
Suite 200
Burnsville, MN 55337
Charlie@GilbertAlden.com
612-990-2484 | Office & Cell
612-806-0585 | Fax

**ATTORNEYS FOR PLAINTIFFS**

**ACKNOWLEDGMENT**

That costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.21 to the party against whom the allegations in this pleading are asserted.

Dated this 4th day of February, 2019

/s/ Charlie R. Alden
Charlie R. Alden

13